In re: Rodney Graham, No. 247-11-10 Oecv (Eaton, J., Nov. 22, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT
Orange County

CIVIL DIVISION
Docket No. 247-11-10 Oecv

In re: Rodney Graham
    Petition for Recount, Orange #1 Representative District
    General Election held November 2, 2010

Decision re: Letters from Stephen W. Webster and Erik Mason

A recount was held on Friday, November 19, 2010 for the office of State Representative for the District of Orange #1. During the recount, the counting teams did not set aside any "questionable" ballots for review by the court. All ballots were counted, returned to their bags, and sealed.

After the recount, the court received three letters from two recount participants.

The first and second letters are from Stephen Webster, who was a member of one of the counting groups. In his first letter, he states that his team reviewed "three ballots that had once been marked for Rodney Graham, but thereafter had the mark for him erased." During the recount, Mr. Webster agreed with his team members that the ballots should be approved without counting a vote for Mr. Graham, and each of those ballots were returned to the bags along with the other ballots and sealed. After the recount, however, Mr. Webster decided that he should have asked for the ballots to be reviewed by the court. He asks the court to "revoke" his count of the three ballots, and to reopen the ballot bags from Williamstown, Orange, and Chelsea in order to find the ballots.

In his second letter, Mr. Webster states that he reviewed a sample ballot from the Randolph Town Hall after the recount. The sample ballot contains a notice instructing voters not to make erasures on their ballot, but rather to ask for a new ballot instead.

The third letter is from Erik Mason, who was a member of a separate counting group. He states that his team reviewed one ballot where "[b]oth ovals next to Phil Winters and Rodney Graham were filled in but the one next to Rodney Graham was much lighter than the one next to Phil Winters." Mr. Mason initially wanted to count this ballot as containing a vote for Mr. Graham, but his team members did not agree, feeling that the voter had "erased the vote" for Mr. Graham. Mr. Mason eventually agreed with his team members, and approved the ballot without counting a vote for Mr. Graham; the ballot was returned to the bag along with the other ballots and sealed. Mr. Mason asks the court to count all four votes for Mr. Graham and to inspect all ballots to "make sure there are not more votes like this."

The election statutes do not permit recount participants to challenge particular ballots after the recount is over. Instead, the statutes make clear that it is the responsibility of each counting team to determine during the recount whether a ballot should be approved, or whether the ballot should instead be set aside as "questionable" and submitted to the court for further inspection. Each counting team is to count the votes as follows:

> (a) The caller shall call the name of the person voted for and/or blank ballots, and/or spoiled ballots. The tally person and the double-check person or persons each shall make a suitable mark for that candidate and/or blank ballots, and/or spoiled ballots.

> (b) If the caller and the observer or observers do not agree on how a ballot should be counted, the entire team shall review the ballot and if all members agree, it shall be counted that way.

> (c) If one person does not agree, that ballot shall be set aside as a questioned ballot and a copy shall be made, which copy shall be clearly marked on its face identifying it as a copy. Such copies shall be placed on the top of the other ballots and shall remain together with the other ballots. Each original ballot deemed questionable shall be attached to a note which identifies it by town, county, polling place and bag seal number. The originals of these questionable ballots shall be clipped to the summary sheet for that polling place and returned to the court for a final decision.

> (d) After the court has rendered a final decision on a given questionable ballot it shall be returned to the county clerk who shall keep it in a sealed container for a period of two years.

17 V.S.A. § 2602f. After the ballots are counted, the counting team performs a second tally, "following the procedures established for the first recount." The team therefore has another opportunity to set aside "questionable" ballots for review by the court. *Id*. § 2602g(b). At the end of the recount, if there are no "questionable" ballots, then all ballots are returned to their containers and sealed, and the recount is complete. *Id*. § 2602h.

Here, there were no ballots identified as "questionable" and set aside for court review during the recount. Instead, Mr. Webster's team discussed three ballots, and they all agreed that the ballots should be approved without counting a vote for Mr. Graham. Mr. Mason initially disagreed with his team members about how ballot should have been counted, but he eventually agreed with the rest of his team that the ballot should be

2

approved without counting a vote for Mr. Graham. As a result, neither Mr. Webster nor Mr. Mason set aside any ballots as "questionable" during the recount, even though they had an opportunity to do so.

It is now too late to challenge particular ballots that were not set aside during the recount. It would not be fair to allow counters to agree with their team members as to how particular ballots should be counted during the recount, but then to raise questions after the recount is over, and after the results of the recount are known. Nor would it be fair to reopen the sealed ballot bags, after the recount is complete, to search for particular ballots. Such a search would amount, in effect, to another recount of the ballots, and the election statutes do not permit ballot bags to be unsealed for this purpose.

For these reasons, the court denies the requests of Mr. Webster and Mr. Mason to reopen the ballot bags for the purpose of finding four specific ballots and reviewing the intent of the voters.

Since no other questionable ballots were presented to the court for review, the clerk shall certify the results of the recount to the court pursuant to 17 V.S.A. § 2602h(d). Any candidate or their attorney seeking to present evidence relating to the conduct of the recount pursuant to 17 V.S.A. § 2602j(c) shall do so by motion filed no later than 4:00 p.m. on Monday, November 29, 2010 in the Vermont Superior Court, Orange Unit.

Dated at Chelsea, Vermont this 22nd day of November, 2010.

_____
Hon. Harold E. Eaton, Jr.
Superior Court Judge

3